1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4   MIKE NEWCASTLE,                               3:13-cv-00091-RCJ-VPC

5                               Plaintiff,

6     v.                                          <u>**REPORT AND RECOMMENDATION**</u>
                                                  <u>**OF U.S. MAGISTRATE JUDGE**</u>
7

8   L. C. ADAMS, *et al.,*

9                               Defendants.

10

11          This Report and Recommendation is made to the Honorable Robert C. Jones, United

12   States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28

13   U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary

14   judgment (#47).  Plaintiff opposed (#49), and defendants replied (#50).  The court has reviewed

15   the motion and papers, and hereby recommends that the motion be granted.

16          **I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

17          Mike Newcastle ("plaintiff") is an inmate in the custody of the Nevada Department of

18   Corrections ("NDOC").  Although plaintiff is presently incarcerated at High Desert State Prison

19   ("HDSP") in Indian Springs, Nevada, most events giving rise to this action occurred during a

20   period of incarceration at Ely State Prison ("ESP") in Ely, Nevada.  Pursuant to 42 U.S.C. § 1983,

21   plaintiff brings civil rights claims against ESP officials.

22          In the screening order, the District Court permitted plaintiff to proceed on count I's Eighth

23   Amendment claims against ESP correctional officers James Bruffy ("Bruffy"), Benjamin Kelly

24   ("Kelly"), and Michael Cardinal ("Cardinal"), and ESP Warden Renee Baker ("Baker").  (#4 at 4-

25   5.)  The District Court dismissed count II's Fourteenth and Eighth Amendment claims and count

26   III's Eighth Amendment claim.  (*Id*. at 7-10.)  Although given leave to amend as to most of the

27   count II claims, plaintiff did not file an amended complaint to cure the deficiencies.  In addition,

28   on April 21, 2015, the District Court dismissed the count I claims against Kelly and Cardinal due

1    to plaintiff's failure to serve (#54).  Accordingly, at this time, only the Eighth Amendment claims

2    against Bruffy and Baker remain in this action.

3        The alleged violations of plaintiff's Eighth Amendment rights relate to a series of events

4    in March 2011.  On March 7, 2011, plaintiff brutally battered a non-custodial prison employee in

5    ESP's culinary area.[1]  Several ESP officers and officials, including defendant Bruffy, responded

6    to the emergency.  Plaintiff alleges that, during his apprehension, Bruffy used excessive force in

7    restraining him.   Specifically, plaintiff contends that Bruffy choked him, caused him to

8    asphyxiate in his own vomit, dislocated his jaw, injured his shoulder and elbow, and kneed him in

9    the face and the head.  (#5 at 9.)  Plaintiff contends that he had already been placed in full

10   restraints at the time these actions occurred, and that these uses of force caused abrasions, bruises,

11   swelling, permanent scars, and numbness. (*Id.*)     Thereafter, plaintiff alleges that various

12   prison officials, upon Baker's order, isolated him in areas of ESP and later HDSP for

13   approximately one week without clothing and personal property, including his eyeglasses.  (*Id.* at

14   14.)  He contends that he was maintained in these areas with continual illumination and under

15   constant video surveillance, "resulting in intense humiliation and sleep deprivation."  (*Id.*)

## II.    LEGAL STANDARD

17       Summary judgment allows the court to avoid unneeded trials.  *Nw. Motorcycle Ass'n v.*

18   *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary

19   judgment when the record discovered by the parties demonstrates that "there is no genuine issue

20   as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

21   56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify

22   which facts are material.  Only disputes over facts that might affect the outcome of the suit under

_____

24   [1] The incident led to a state court criminal proceeding against plaintiff, in which he was convicted
25   to a lengthy term of incarceration that runs concurrently with his underlying sentence for first-
     degree murder.  *See Newcastle v. Nevada*, No. 64740, 2014 WL 4672902, at *1 (Nev. Sept. 18,
26   2014).    The parties do not appear to dispute that plaintiff engaged in this conduct, but in any
     case, plaintiff would be precluded from arguing the point.  His battery of the employee was an
27   issue actually and necessarily litigated in the state criminal action; the issue is identical to the fact
     in this case; plaintiff was a party to the prior action; and the conviction was on its merits and is
28   now final.  *See In re MGM Derivative Litig.*, No. 2:09-cv-01815-KJD-RJJ, 2014 WL 2960449, at
     *3 (D. Nev. June 30, 2014) (discussing the requirements for issue preclusion in this district).

the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). A dispute is "genuine" only where a sufficient evidentiary basis would allow a reasonable jury to find for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp*., 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 288–89 (1968)). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Nelson v. Pima Cmty. Coll*., 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. When the moving party bears the burden of proof at trial, it must support its motion "with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation omitted). In contrast, a moving party who does not bear the burden of proof "need only prove that there is an absence of evidence to support the non-moving party's case[,]" *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 387 (9th Cir. 2010), and such a party may additionally produce evidence that negates an essential element of the nonmoving party's claim or defense, *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden under Rule 56, the nonmoving party must "designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one." *In re Oracle Corp*., 627 F.3d at 387 (internal citation omitted). "The non-moving party must show more than the mere existence of a scintilla of evidence. . . . In fact, the

non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id*. (internal citations omitted).   Although the nonmoving party need not produce authenticated evidence, *see* Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported summary judgment motion, *Orr*, 285 F.3d at 783.

Additionally, courts are not to adopt at summary judgment the version of events told by one party that "is blatantly contradicted by the record, so that no reasonable jury could believe it, . . . ." *Scott v. Harris,* 550 U.S. 372, 380 (2007).   Where "'the factual context makes the non-moving party's claim of a disputed fact implausible, . . . that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial.'"   *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (quoting *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1147 (9th Cir. 1998)); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   DISCUSSION

Defendants move for summary judgment on two bases.   First, they argue that plaintiff failed to exhaust his administrative remedies as to the claim against Baker.   (#47 at 6-7.)   Second, they argue that the record demonstrates that plaintiff cannot establish the necessary elements of an excessive force claim against Bruffy.   (*Id*. at 7-11.)   The court considers each argument in turn.

### A.   Exhaustion of Remedies under the PLRA

Defendants move for summary judgment on the claim against Baker on the basis of exhaustion, as required by the Prison Litigation Reform Act ("PLRA").   Specifically, they argue that the sole grievance that plaintiff filed regarding the March 7, 2011 incident, to which prison officials assigned the log number 2006-29-29520 (the "'520 grievance"), fails to name Baker and otherwise describe the alleged wrongdoings from which the claim against her arises.   (*Id*. at 6-7.) Plaintiff counters that, under *Jones v. Bock*, 549 U.S. 199, 218 (2007), an inmate plaintiff need not specifically name a prison official to properly exhaust the grievance process.   (#49 at 1-2.) Because the NDOC's grievance process, embodied with Administrative Regulation ("AR") 740, does not require that NDOC inmates name the particular official, plaintiff maintains that his

1    grievance exhausted this claim.  (*Id.* at 2.)  Defendants respond that plaintiff's failure to exhaust

2    stems not from his failure to name Baker, but instead, from his failure to grieve the incidents

3    themselves—namely, the allegations pertaining to the custody conditions following the March 7

4    battery.  (#40 at 7-8.)

5    **1.     Legal Standard**

6              Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42

7    U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

8    correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.

9    § 1997e(a).  The exhaustion requirement is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524

10   (2002).  Failure to exhaust is an affirmative defense, and the defendants bear the burden of proof.

11   *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Within the Ninth Circuit, the proper vehicle for raising

12   exhaustion is no longer a motion to dismiss, unless exhaustion—which need not be pled—is plain

13   on the face of the complaint.  *Albino*, 747 F.3d at 1168-69.  Otherwise, defendants move for

14   summary judgment on the basis of exhaustion, which "should be decided, if feasible, before

15   reaching the merits of a prisoner's claims."  *Id.* at 1169-70.

16            The PLRA requires "proper exhaustion" of an inmate's claims.  Proper exhaustion is the

17   use of "'all steps that the [prison] holds out, . . . .'"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)

18   (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  The inmate must pursue

19   these remedies "'*properly* (so that the agency addresses the issues on the merits).'"  *Id.*  (quoting

20   *Pozo*, 286 F.3d at 1024) (emphasis original).  Thus, exhaustion "demands compliance with an

21   agency's deadlines and other critical procedural rules because no adjudication system can

22   function effectively without imposing some orderly structure on the course of its proceedings."

23   *Id.* at 90-91.  Applicable procedural rules for proper exhaustion "are defined not by the PLRA,

24   but by the prison grievance process itself."  *Jones*, 549 U.S. at 218.

25            "The level of [factual] detail in an administrative grievance necessary to properly exhaust

26   a claim is determined by the prison's applicable grievance procedures."  *Morton v. Hall*, 599 F.3d

27   942, 946 (9th Cir. 2010) (citing *Jones*, 549 U.S. at 218).  "[W]hen a prison's grievance

28   procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the

1   prison to the nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117,

2   1120 (9th Cir. 2009) (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)); *see also Sapp*

3   *v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010). Because the purpose of the grievance "is not to

4   lay the groundwork for litigation[,]" but rather "to alert the prison to a problem and facilitate its

5   resolution," the grievance "need not include legal terminology or legal theories unless they are in

6   some way needed to provide notice of the harm being grieved." *Griffin*, 557 F.3d at 1120. In

7   other words, the grievance suffices as long as it sufficiently places prison officials on notice of

8   facts by which they can determine the "root cause" of the issue, whatever may be the inmate's

9   legal theories or claims should litigation ensue. *See McCollum v. Cal. Dep't of Corrs. and*

10  *Rehab.*, 647 F.3d 870, 876-77 (9th Cir. 2011); *Akhtar v. Mesa*, 698 F.3d 1202, 1211 (9th Cir.

11  2012).

12        Upon the defendants' showing of an unexhausted available remedy, the burden shifts to

13  the inmate "to come forward with evidence showing that there is something in his particular case

14  that made the existing and generally available administrative remedies effectively unavailable to

15  him." *Albino*, 747 F.3d at 1172. A remedy is "available" when, as a practical matter, it is capable

16  of use. *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005). Where prison officials render

17  administrative remedies "effectively unavailable" under the circumstances, an inmate's failure to

18  exhaust is excused. *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010).

19  **2.**    **The NDOC's Inmate Grievance System**

20        Inmates incarcerated within NDOC institutions may grieve "conditions of institutional

21  life" pursuant to AR 740.[2] All grievances "alleging staff misconduct will be reviewed by the

22  Warden and if deemed appropriate will be forwarded to the Office of the Inspector General . . . ,"

23  AR 740.05(11), and allegations of "inmate abuse by Department staff . . . shall be immediately

24  reported to the [Associate Wardens], the Warden, and the Inspector General's Office . . . ," AR

25  740.03(2).

26

27  _____

28  [2] Defendants submitted with their motion an authenticated copy of AR 740 (#47 Exh. G-1), and
the parties do not dispute the authenticity of the exhibit.

1   Ordinarily, the NDOC grievance process begins at the informal level.  If the inmate is

2   unable to resolve the issue through discussion with an institutional caseworker, *see* AR 740.04,

3   the inmate is to file an informal grievance "[w]ithin six (6) months if the issue involves personal

4   property damages or loss, personal injury, medical claims or any other tort claims, including civil

5   rights claims[,]" AR 740.05(4).   Although the inmate must submit "[a]ll documentation and

6   factual allegations available" to him upon his filing an informal grievance, AR 740.05(5)(A), the

7   AR makes contains no particular requirements analogous to a legal pleading standard or naming

8   of responsible officials.   An inmate who is dissatisfied with the informal response may appeal to

9   the formal level within five days.  AR 740.05(12).

10   At the first formal level, officials of a higher level respond.  *See* AR 740.06(1).  The

11   inmate also "shall provide a signed, sworn declaration of facts that form the basis for a claim that

12   the informal response is correct. . . . Any additional relevant documentation should be attached at

13   this level."  AR 740.06(2).  Within five days of a dissatisfactory first-level response, the inmate

14   may appeal to the second level, which is subject to still-higher review.  *See* AR 740.07(1).

15   **3.     Analysis**

16   The court recommends summary judgment against plaintiff because he has failed to

17   exhaust the claim against Baker.   Count I's claim against Baker pertains not to the alleged

18   excessive force of the officers, but instead, alleged maltreatment in the form of deprivations and

19   harsh conditions during plaintiff's period of custody following his apprehension in the ESP

20   culinary area.  (*See* #5 at 14.)   The parties do not dispute that the '520 grievance is the sole

21   applicable grievance.  Although plaintiff is correct that he did not need to name Baker specifically

22   to exhaust the claim under AR 740, his rejoinder fails because the '520 grievance pertains solely

23   to the alleged misconduct of various correctional officers on March 7, 2011.

24   The '520 grievance is entirely silent on any alleged wrongdoing that followed the

25   incident.  (*See* #47 Exh. G-2, at 2-17.)  In his own words, plaintiff grieved about "staff abuse,

26   battery, and torture; *which happened on March 7, 2011* when an incident occurred in the Culinary

27   of Ely State Prison . . . ."   (*Id*. at 2) (emphasis added).   The description of the alleged

28   wrongdoings in the '520 grievance confirm that plaintiff grieved not about the conditions of his

post-incident custody, but instead his purported maltreatment during his apprehension by correctional officers. Plaintiff extensively details claims of physical force—choking, kicking, being beaten and shoved into walls, and the like. In contrast, the grievance omits any reference to nakedness, property deprivation, and constant illumination in the following days.

The closest relation of any grievance statement to the allegations against Baker is plaintiff's reference to his placement in a "small visiting closet" after being restrained. (*Id.* at 9-10.) Yet here, where he might have described the allegedly wrongful conditions of the closet and other units, whether at ESP or HDSP, in which he was allegedly held, he says nothing related to the "nature of the wrong[s]" for which he seeks redress. *Griffin*, 557 F.3d at 1120. Although he did not need to present particular legal theories or recite legally meaningful language, he faced the minimal requirement of apprising NDOC officials of facts from which they could determine the "root causes" of the custody issues. *McCollum*, 647 F.3d at 76-77; *Akhtar*, 698 F.3d at 1211. That entailed grieving the conditions in which he was held, the investigation of which would have allowed officials to discover Baker's order—if, in fact, she had instructed officials to act in the way that plaintiff alleges—so that they could take actions to correct it. Because he failed to describe these alleged wrongdoings, he failed to give notice and thereby properly grieve the claim. Accordingly, the court concludes that summary judgment on the claim against Baker is proper, and recommends that defendants' motion be granted.

**B.    Eighth Amendment Excessive Force**

Unlike the claim against Baker, defendants concede that plaintiff has properly exhausted with respect to Bruffy. (#50 at 7.) Nevertheless, they move for summary judgment on the basis that plaintiff will be unable to establish the elements of an excessive force claim. (#47 at 8-11.) Plaintiff counters that because the parties dispute particular facts, he must survive summary judgment. (#49 at 4.) Defendants rejoin that the evidence, even when viewed in favor of plaintiff, does not support his allegations. (#50 at 8.)

As a preliminary issue, the complaint alleges excessive force against Bruffy only relating to his restraint and apprehension of plaintiff in the culinary area. (#5 at 9.) Although plaintiff's complaint, grievance, and deposition testimony airs sweeping allegations against several prison

8

officials, including allegations relating to his walk to an ESP holding area and repeated beatings in that holding cell, the complaint focuses the allegations against Bruffy to a specific number of actions that purportedly occurred prior to his transfer to custody following the noon-time battery on March 7.  Because plaintiff is represented by counsel, the court reads the complaint by its plain language and construes the claim against Bruffy to focus only upon those pre-transfer events in the culinary area.

## 1.    Legal Standard

The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . . ."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners.  *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992).  Courts in the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'"  *Id.* at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The inmate must demonstrate that officials acted maliciously and sadistically to prevail.  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  As the Ninth Circuit has explained,

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison.  When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'"  In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson*, 503 U.S. at 6 and *Whitley*, 475 U.S. at 320).  Thus, the court must be careful when reviewing the factors to verify

1   indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to

2   a knowing willingness that it occur." *Hudson*, 503 U.S. at 9.

3   **2.      Analysis**

4           In light of the record, Bruffy is entitled to summary judgment.  The evidence submitted by

5   defendants renders plaintiff's tale implausible, and the court concludes that his burden to

6   demonstrate genuine factual disputes is, therefore, a heightened one.  *LVRC Holdings*, 581 F.3d at

7   1137.  Plaintiff's uncorroborated deposition testimony does not carry the burden.

8           **a.      Evidence in the Record**

9           Prior to turning to the relevant factors, the court addresses a preliminary evidentiary issue.

10  For the most part, the parties rely largely upon the same evidence.  Of relevance to defendants'

11  motion is plaintiff's deposition testimony (#47 Exh. A); an "Unusual Occurrence Report," which

12  documented plaintiff's medical condition following the culinary alteration (#47 Exh. G-4);

13  plaintiff's medical requests between March 7, 2011 and December 31, 2011 (#50 Exh. F); video

14  footage of a portion of the March 7 incident (#47 Exh. F); declarations from Bruffy and

15  Lieutenant Ronald Bryant (#47 Exhs. D, E); and internal staff reports in which prison officials

16  describe their various roles and observations of the incident (#47 Exh. G-5).

17          Plaintiff opposes summary judgment on the basis of his deposition testimony and also a

18  series of witness statements during his criminal trial for the battery.  (#49 at 3-4.)  The testimonial

19  statements are those of three individuals by the names of Palczewski, Drummond, and Smith.

20  (*See* #49 at 3 and associated exhibits.)  The record and briefing indicates that Palczewski is

21  another inmate, Drummond is a former ESP official, and Smith is an ESP nurse.  As the court

22  explains below, these statements are not admissible evidence. The court thus sets them aside.

23          Although a party opposing summary judgment need not submit authenticated evidence,

24  the evidence upon which he relies must be admissible.  *Orr*, 285 F.3d at 773 (citing Fed. R. Civ.

25  P. 56(e) and *Beyene v. Coleman Sec. Servs., Inc.*, 874 F.2d 1179, 1181 (9th Cir. 1988)).

26  Inadmissible evidence generally includes hearsay statements. Fed. R. Evid. 802.  Hearsay is any

27  oral assertion by an out-of-court declarant offered to prove the truth of the matter asserted.  Fed.

28  R. Evid. 801(a)-(c).  Here, each individual is an out-of-court declarant, and their statements are

offered to prove various facts—including whether plaintiff had been resisting restraint and his treatment by Bruffy and other correctional officers.  (*See* #49 at 3.)  Thus, the remarks fall within Rule 801's definition of hearsay.

Moreover, because each statement is provided in a trial transcript, they are the court reporter's statements about the testimonial remarks.  This renders them hearsay within hearsay.  Further, a portion of Smith's statements feature a third-level of hearsay, for he testifies about what plaintiff told him.  (*See* #49 Exh. 7, at 395:7-10) (describing the contents of plaintiff's remarks).  Where hearsay has multiple levels, each must fall within an exception for the statement to be properly admitted.  Fed. R. Evid. 805.  Unless an exception applies to each level, the statements are inadmissible.  Fed. R. Evid. 802, 805.

None of the statements falls within an exception at each level; therefore, they are inadmissible.  As a preliminary matter, the public records exception in Rule 803(8) applies to the court-reporter level of hearsay.  *United States v. Arias*, 575 F.2d 253, 254 (9th Cir. 1978) (holding that a trial transcript is admissible under the FRE 803(8)).  However, that exception does not apply to the witness statements themselves, for they are offered to prove the truth of the matters asserted.  *See id*. at 254 n.1; *Wong Wing Foo v. McGrath*, 196 F.2d 120, 123 (9th Cir. 1952).  No exception applies to the other levels.  Rule 804(b)(1) allows admission of former testimony, whether at trial or deposition, only when the declarant is "unavailable."  Unavailability is limited to particular instances, *see* Fed. R. Evid. 804(a), and the proponent must prove that one of those instances applies, *United States v. Lopez-Cruz*, 470 F.2d 193, 194 (9th Cir. 1972).  Plaintiff has not stated—let alone proven—that any one of these three individuals is unavailable in this proceeding, and thus, the exception does not apply.  Further, without exhaustive analysis of each of the twenty-three possibilities in Rule 803, it is plain that these exceptions are inapplicable here.  *Cf. Trs. of Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890, 905 (3d Cir. 1987) ("Admission of prior testimony through a court transcript, . . . would emasculate large portions of the hearsay rule.").  Accordingly, the court shall not consider these testimonial statements when considering plaintiff's opposition.

### b. Discussion

The court now turns to the claim.  Bruffy responded to an emergency situation involving plaintiff's attack of a prison official.  (#47 Exh. D, at ¶ 5.)  The incident gave rise to the officers' reasonable perception of threat by plaintiff; thus, consistent with the deference this court owes to prison officials responding to a violent situation, Bruffy had justification to use some level of force.  Although the parties dispute the extent to which plaintiff resisted apprehension, a fact that goes to the need for force, the issue is ultimately immaterial.  The record renders implausible plaintiff's far-reaching allegations about the amount of force Bruffy employed, and in light of the circumstances, the record supports the conclusion that Bruffy's use of force was neither wanton nor sadistic, as required for a jury to render a verdict in plaintiff's favor.

The court is mindful that excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."  *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir.1997) (citing cases).  Nevertheless, the court proceeds cautiously because the Supreme Court instructs that courts should afford deference to the actions of prison officials who respond to emergency situations, and therefore, cases ought not go to the jury unless the facts support "a reliable inference of wantonness in the infliction of pain . . ." under the applicable factors.  *Whitley*, 475 U.S. at 321-22.

In this case, the parties offer two competing narratives of Bruffy's actions following the March 7, 2011 battery.  On one hand, defendants contend that Bruffy and others used some level of force, but only enough to overcome plaintiff's resistance.  (#47 Exh. D, at ¶ 8; Exh. E, at ¶ 8, 14.)  On the other, plaintiff offers through his deposition testimony a version of events featuring egregious maltreatment that resulted in severe injuries.  He states:

> At one point, Officer Bruffy, his knee had slid from the area behind my right ear to actually being directly on my right ear.  And he was twisting his knee into that ear, forcing my —the opposite ear, the ear on the floor, to be crushed into the floor so I couldn't hear anything.  And he was yelling profanities and obscenities at me, you know, "Shut up and take it.  You've only just begun to feel pain."  But I'm

1   desperate to – what can I do to get him to stop this?  But I couldn't say anything.  If
2   I tried to speak a word, he would knee me in the mouth, knee me in the eye, and go
    back to screaming obscenities at me.  As it turns out, toward the end of – of that,
3   after about thirty minutes, he had moved to choking me with the collar of my
    jumpsuit.

4   And I had – I had never felt more resigned to accepting death than at that moment.
5   I honestly felt like this is it.  Right now, this moment, this is where I die, as he
    choked me unconscious.  I regained consciousness sometime later and I was under
6   the impression that somebody had thrown some kind of slurry or something on my
    face.  But as it turns out, as I was unconscious, I vomited.  And Bruffy went then to
7   drowning me in the vomit on the floor.  And then, again, used the collar on my
    jumpsuit to choke me unconscious a second time.

8   (#47 Exh. A, at 40:21-41:20.)

9           The record before the court renders plaintiff's version of events wholly implausible.  It is

10  an undisputed fact in the record that the battery occurred sometime around noon.  (#47 at Exh. G-

11  5.)  Plaintiff states that "several minutes" passed from the moment prison staff responded to the

12  incident in the culinary area before they "jumped on his back" and began abusing him.  (#47 Exh.

13  A, at 36:25-37:15, 37-42.)  The video footage begins sometime around 12:05 p.m., and about

14  eight minutes later—that is, approximately fifteen minutes after the battery had occurred—

15  plaintiff's escort to the holding area begins.  (*See* #47 Exh. F at 0:03, 8:00.)  Thus, within that

16  thirteen to fifteen minute window, less "several minutes" during which plaintiff allegedly lay on

17  the ground untouched, Bruffy somehow savagely beat him for "thirty" minutes.  (#47 Exh. A, at

18  40:18-20, 41:8.)  Plaintiff's repetition of the time frame—and, in fact, concession that he

19  perceived it to be one hour prior to later clarification—counsels against construing his use of time

20  as mere hyperbole.

21          Also around the eight-minute mark, plaintiff appears in the video.  The video depicts none

22  of the actions plaintiff attributed to Bruffy, so all of the kicking, choking, kneeing and the like

23  must have occurred prior to that time.  Thus, when plaintiff appears, it is at a moment directly

24  following the minutes in which Bruffy allegedly committed the various atrocities.  (#47 Exh. F, at

25  8:20.)  However, it is plain from plaintiff's appearance that he had not been subject to grotesque

26  violence.  In short, no person who had been choked, booted, kneed, and crushed into the floor for

27  a significant period of time could appear as does plaintiff in the video.  He may be distraught, but

28  he is not grievously injured.

In his deposition, plaintiff goes on to state that, upon the decision to move him into holding, one of the correctional officers "use[d] the handcuffs as leverage to dislocate my fingers. I believe he broke my thumb. . . . I believe he broke my right wrist." (#47 Exh. A, at 51:8-11.) Once again, the video forecloses this allegation.[3]  Although plaintiff groans audibly as prison officials hold him, the location of the officers' hands is visible as plaintiff is turned toward the door.  The video's quality is somewhat poor, but when it is viewed frame by frame, it is evident that the officers are not leveraging the handcuffs in the way plaintiff contends.  Instead, the officers are holding plaintiff's upper arms and mid forearms.  (*See* #47 Exh. F.)  Thus, although the video does not document the minutes surrounding his placement into restraints and during which he alleges that he faced excessive force, it renders implausible his version of these events.[4]

Ordinarily, the above discrepancies might be insufficient as a basis for granting summary judgment, for they do not absolutely preclude the existence of various factual issues.  It is axiomatic that the court must view the facts in a light most favorable to plaintiff, and as such, it is possible that he simply did not sustain immediate physical indicia of harm and the alleged incidents occurred over a smaller period of time.  *See Wilkins*, 559 U.S. at 38 ("Injury and force . . . are only imperfectly correlated . . . .").  Yet plaintiff's medical files also enter the court's analysis, and they more strongly confirm that his story is outside the realm of possibility.  In an "Unusual Occurrence Report" dated March 7, 2011, LPN Smith described plaintiff's condition

---

[3] Relatedly, the video renders undisputed that no excessive force occurred during plaintiff's move to the holding area.  The record suggests that Bruffy was one of the officers who escorted plaintiff.  To the extent that the District Court wishes to construe the complaint as encompassing these actions, this court recommends summary judgment be granted on the basis of the video footage.  The depiction therein forecloses plaintiff from establishing excessive force, for it is plain from the video that Bruffy (and others) used only as much force was necessary to walk plaintiff to the cell, and nothing—including the incident where plaintiff is held against the wall, when he appears to be resisting their control—supports the conclusion that they acted with malice and intent to harm him.

[4] For clarity, the court is not discrediting plaintiff's story on the grounds of his credibility, for that is the sole province of a jury.  Instead, based upon the video's depictions, the court has determined that no reasonable jury could accept his allegations because, without other evidentiary support, they are deeply implausible in light of the record.  Were his factual contentions more limited in nature, they might be entirely consistent with his physical appearance and the medical records the court discusses above.  Yet his grave and sweeping allegations are consistent across his complaint, his grievance, and his deposition testimony.  Consequently, there is little basis to infer that there is a milder alternative version of the events aside from the one defendants articulate.

14

soon after the beating allegedly occurred.  Smith noted some minor abrasions, bruising, and pain upon palpitation to plaintiff's thumbs.  (#47 Exh. G-4.)  Yet absent from the report is any indication of broken bones, massive swelling related thereto, broken teeth, bruising on plaintiff's eyes, a dislocated jaw, or any other severe injury from which a jury could infer that Bruffy acted in the manner plaintiff contends.  Moreover, Smith stated that plaintiff's condition did not indicate medical treatment whatsoever at that time.[5]  (*Id.*)  At bottom, plaintiff's allegations are not remotely consistent with the medical documentation and treatment conclusion Smith reached.

Additionally, defendants submit all of plaintiff's medical treatment requests from March 7, 2011 to December 31, 2011.  Not once did plaintiff request treatment for horrific injuries, pain, and the like.  He requested on several occasions, however, treatment for painful outbreaks related to the herpes virus, headaches, allergies, and fiber laxatives.  (#50 Exh. F.)  It is simply beyond credulity that plaintiff would request treatment for these conditions—certainly, not minor ones— but tender no requests for more severe injuries consisting of several broken bones, crushed ears, and other significant injuries—if, in fact, the latter were present.  Once again, the extent of plaintiff's allegations is dispositive to the summary judgment inquiry.  Comparing the record to his allegations, the latter are simply beyond what a reasonable jury could divine from the record.

Accordingly, the court concludes that the heighted summary judgment burden, *see LVRC Holdings*, 581 F.3d at 1137, applies in this case.[6]  In order to return a verdict in plaintiff's favor, a juror would have to accept as true plaintiff's uncorroborated deposition testimony as to the

---

[5] Plaintiff argues in his opposition that he feared retaliation and, therefore, limited his remarks about his purported injuries during Smith's evaluation.  (#49 at 4; #47 Exh. A, at 65:15-18.)  However, he also states that he "didn't need to" describe his injuries because Smith "saw the damaged and noted it." (#47 Exh. A, at 65:23-24.)  Thus, the court's analysis of Smith's report is unaltered by his deposition statements.  As plaintiff makes no suggestion that Smith inaccurately described the injuries or purposively concealed the extent thereof, there is no basis for inferring that plaintiff, contrary to the medical documentation, had broken bones and other indicia of Bruffy's allegedly violent attack upon him.

[6] Not all instances of contradiction in the evidence supports a court's imposition of the heightened burden or rejection of a party's story as "blatantly contradicted."  For example, in *Young v. County of Los Angeles*, the Ninth Circuit held that a plaintiff's conflicting statements as to how many times he had been struck, in an excessive force case, did not render the evidence blatantly contradictory.  655 F.3d 1156, 1161 & n.6 (9th Cir. 2011).  This case is unlike *Young*, however.  The implausibility of plaintiff's allegations is not limited to some smaller issue, such as the number of times he was kicked or choked.  Instead, the evidence undermines the very heart of his contention that Bruffy acted with excessive force.

1   physical violence and disregard the complete lack of contemporaneous medical evidence and the

2   significant discrepancies in plaintiff's story.   A juror would have to accept that plaintiff was

3   wantonly abused despite the overwhelming evidence to the contrary, while also ignoring

4   plaintiff's simultaneous testimony about his horrific injuries.   Such a juror would not be

5   reasonable, and jurors may draw only those inferences the evidence reasonably supports.

6          In sum, only plaintiff's unpersuasive and uncorroborated deposition testimony supports

7   his allegations regarding the force Bruffy used and the injuries he sustained.   Although injury,

8   itself, is not required to prevail, *see Hudson*, 475 U.S. at 9, plaintiff's relative lack of injuries

9   provides "some indication of the amount of force applied."   *Wilkins*, 559 U.S. at 37.   Although

10  Smith's report documented some degree of injury, the report is consistent not with wanton and

11  "unjustified infliction of harm . . . [,]" but instead, only "with a good faith effort to maintain or

12  restore discipline, . . . ."   *Hudson*, 503 U.S. at 7.        Consequently, this case provides no "reliable

13  inference" of excessive force, and ought not go to the jury.   *Whitley*, 475 U.S. at 321-22.

14                                    **IV.       CONCLUSION**

15         Because the court has concluded that plaintiff has not grieved the allegations against

16  Baker, and also that the evidence in the record prevents a reasonable jury from rendering a verdict

17  in plaintiff's favor as to the alleged events of March 7, 2011, the court recommends that

18  defendants' motion for summary judgment (#47) be granted.

19         The parties are advised:

20         1.       Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

21  Practice, the parties may file specific written objections to this Report and Recommendation

22  within fourteen days of receipt.   These objections should be entitled "Objections to Magistrate

23  Judge's Report and Recommendation" and should be accompanied by points and authorities for

24  consideration by the District Court.

25         2.       This Report and Recommendation is not an appealable order and any notice of

26  appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

27  judgment..

28

1

## V.    RECOMMENDATION

2          **IT IS THEREFORE RECOMMENDED** that defendants' motion for summary

3   judgment (#47) be **GRANTED**;

4          **IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close

5   this case.

6   **DATED**: June 23, 2015.

7                                              _____

8                                              **UNITED STATES MAGISTRATE JUDGE**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28